**GLASER v. HENDERSON. (No. 7165.)**

Court of Civil Appeals of Texas. Austin. Jan. 11, 1928.

Rehearing Denied Jan. 25, 1928.

1. **Evidence** ⬅️443(1)—**Testimony as to agreement to let indebtedness run to maturity if chattel mortgagee would give trust deed to land held admissible to explain purpose and consideration of such deed.**

In trespass to try title, bank officer's testimony that he told parties' common predecessor in title that he would let latter's indebtedness, which bank had declared due under chattel mortgages, run to maturity, if debtor would give bank trust deed to land, *held* admissible as merely explaining purpose and consideration of trust deed and chattel mortgage executed in consummation of such verbal agreement.

2. **Evidence** ⬅️443(2)—**Parol evidence rule is inapplicable to verbal contract constituting integral part or whole consideration for written instrument.**

Parol evidence rule is inapplicable to verbal contract constituting integral part or whole consideration for execution and delivery of written instrument not inconsistent therewith.

**3. Chattel mortgages ⟵252—Evidence ⟵441 (11)—Verbal agreement as to acceleration did not vary contract and did not apply to subsequent defaults.**

Verbal agreement not to declare notes due before maturity under acceleration of payment clauses in chattel mortgages securing them did not vary or abrogate such written provisions, and hence did not deprive mortgagee of right to declare all notes due under such provisions and like provisions in trust deed and chattel mortgage, executed in consummation of such verbal agreement, for subsequent acts of mortgagor.

**4. Contracts ⟵143—Whole contract and all integral parts must be construed together.**

Whole contract and all its integral parts must be construed together.

**5. Chattel mortgages ⟵261—Mortgagee held justified in taking charge of mortgaged stock because of mortgagor's acts after agreement to extend time for payment of notes.**

Mortgagee's action in taking charge of mortgaged stock because of matters happening after execution of agreement to extend time for payment of mortgage notes, declared due under acceleration of payment clauses in mortgages, *held* justified, if tantamount to declaring indebtedness due.

**6. Chattel mortgages ⟵159—Mortgagee held justified in taking charge of stock abandoned by mortgagor.**

Mortgagee *held* justified in taking charge of mortgaged stock, abandoned by mortgagor without leaving any one in charge of them, in order that security might not be wasted or lost.

**7. Homestead ⟵181(3)—Evidence held to support jury's finding of estoppel to set up homestead claim because of chattel mortgagee's reliance on homestead designation in accepting trust deed and consenting to reinstate notes declared due.**

Evidence *held* to support jury's finding that mortgagee relied, and changed their positions for worse in reliance, on mortgagee's homestead designation, in accepting trust deed and consenting to reinstate and carry to original maturity dates mortgaged notes declared due under acceleration of payment clauses, thereby estopping mortgagor's successor in title to set up homestead claim.

**8. Homestead ⟵42—One occupying two residences under such circumstances that either may be homestead must designate homestead.**

One occupying places in both town and country as residences, under such circumstances that either may be his homestead according to his intention, must make homestead designation, as he cannot have more than one homestead, and physical facts alone cannot be relied on as notice that either property is homestead as against the other.

**9. Homestead ⟵57½—Issue of possession of property as homestead at time of executing trust deed held properly refused.**

Where testimony of plaintiff's predecessor, in trespass to try title, showed that when trust deed was executed he occupied two places as residences under such circumstances that either might be his homestead according to his intention, which he clarified by homestead designation, court properly refused to submit to jury issue as to whether he was in possession of property conveyed when he executed deed.

**10. Estoppel ⟵53—Design to mislead is not necessary to equitable estoppel.**

It is not necessary to equitable estoppel that party estopped should design to mislead, if his act was calculated to mislead one acting on it in good faith and exercising reasonable care and diligence under all the circumstances.

**11. Estoppel ⟵57—Party gaining undue advantage and causing adversary loss or injury is estopped.**

A party is estopped whenever he has gained an undue advantage and caused his adversary a loss or injury.

**12. Mortgages ⟵25(6)—Trust deed purports consideration.**

Deed of trust would itself purport a consideration for its execution, if verbal agreement as to consideration were improperly admitted in evidence because merged into later writing.

**13. Mortgages ⟵25(2)—Agreement not to declare chattel mortgage notes due before maturity held valid consideration for trust deed.**

Verbal agreement not to declare notes due before maturity under acceleration of payment clauses in chattel mortgages and to extend time of payment to their original maturity dates constituted a valid consideration for subsequent execution of deed of trust.

**14. Mortgages ⟵25(6)—Grantor will be presumed to have known of promise to extend time for payment of notes in consideration of executing trust deed, in absence of pleading and proof of fraud, accident, or mistake.**

In absence of pleading and proof of fraud, accident, or mistake in execution of trust deed, specifically describing notes secured and reciting extension of their original maturity dates, in respect to grantor's alleged lack of knowledge of promise to extend time of payment, grantor will be presumed to have known purpose of, and consideration for, deed.

**15. Mortgages ⟵87—Evidence held not to warrant submission of plea of fraud in promising to extend time for payment of mortgage notes for sole purpose of inducing execution of trust deed.**

That bank took charge of part of mortgaged live stock shortly after agreeing to extend time for payment of mortgage notes and take deed of trust *held* not to warrant submission to jury of plea of fraud in promising to extend time for sole purpose of inducing execution of deed without intending to comply therewith, in view of undisputed evidence that it took charge of stock for matters happening after execution of deed and because of grantor's abandonment of stock.

**16. Fraud ⟵58(1)—Issue of fraud may be raised by circumstantial evidence.**

The issue of fraud may be raised by circumstantial evidence.

---

⟵For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Tom Green County; J. F. Sutton, Judge.

Trespass to try title by F. R. Henderson against R. L. Glaser. Judgment for plaintiff, and defendant appeals. Affirmed.

James Cornell, of San Angelo, and N. W. Graham, of Ozona, for appellant.

Collins & Jackson, of San Angelo, for appellee.

BLAIR, J. We will designate the parties appellant and appellee. This suit in trespass to try title to recover a section of land in Crockett County, described as Section No. 20, arose as follows: Guss L. Caruthers and wife, Gussie Lee Caruthers, are common source of title. In 1919 and 1920, Guss L. Caruthers executed to Ozona National Bank several chattel mortgages on live stock, securing notes which matured under extension of payment agreements May 1 and 10, 1921. But on February 25, 1921, the bank declared all notes due under provisions of the mortgages authorizing it to do so when it felt insecure in its indebtedness, because Caruthers had disposed of some of the mortgaged property without authority from the bank. On February 26, 1921, Caruthers and wife, in consideration of the bank's agreeing not to declare the notes due and to carry them to their original maturity dates, executed a deed of trust to the bank on said section No. 20, and a chattel mortgage on certain live stock as additional security for the notes, it being agreed that the original mortgages were to continue in force. These new instruments each recited a consideration of $1 paid, and, further, that each was executed to secure the payment of Caruthers' notes to the bank, the deed of trust describing them specifically and the chattel mortgage describing them by reference to description contained in the even date deed of trust. The deed of trust, which was filed and recorded in Crockett county February 26, 1921, and in Irion county March 2, 1921, declared that no part of said section No. 20 was the homestead of the Carutherses, and specifically designated the following property as their homestead:

"Our home in Barnhart, Irion county, Texas, being lot 1 in Block 4, as our homestead, and as constituting all the property (of nature similar to that herein conveyed) owned, used or claimed by us as exempt under said laws."

Shortly after the making of the extension of payment agreement the whereabouts of Guss L. Caruthers became unknown, he leaving some of the mortgaged stock in the pasture of one Whitehead, who notified the bank that Caruthers had made no arrangement with him to pasture the stock and that they must be moved. An officer of the bank took charge of the stock and within the next 60 days sold them for their reasonable market value applying the proceeds of sales in part

payment of Caruthers' indebtedness to the bank, the whereabouts of Caruthers still being unknown. Thereafter, October 14, 1922, Caruthers and wife deeded 200 acres, which is in fact the only land in controversy in this suit, to the Barnhart State Bank of Barnhart, Tex. On December 5, 1922, Elam Dudley, the trustee named in the Caruthers' deed of trust to the Ozona bank, sold the whole of section 20 under the power given therein to appellee, F. R. Henderson. On January 10, 1923, the Barnhart bank deeded the 200 acres to appellant, R. L. Glaser, describing it by metes and bounds, and Glaser went into possession of it. Appellee instituted this suit against appellant, claiming title to the whole of section 20 by virtue of the trustee's deed, supra. Appellant answered that he claimed the 200 acres described in the deed from the Barnhart bank to him because same constituted the homestead of the Carutherses at the time they executed the deed of trust under which appellee claimed title to said 200 acres, and that same was therefore void. Appellee replied that the Carutherses were estopped to set up the homestead claim, because of their homestead designation contained in the deed of trust upon which the bank relied to its injury, there being no question of innocent purchaser involved. Other issues raised by the pleadings will be discussed in the opinion.

A trial to a jury upon special issues resulted in a verdict and judgment for appellee, from which this appeal is perfected, and appellant presents the following propositions for our determination:

[1, 2] 1. Elam Dudley, an officer of the Ozona bank who handled the transactions in question for it, testified over appellant's objection that:

"I told him (Caruthers) that we would let it run (meaning the Caruthers indebtedness which the bank had declared due) to maturity, provided he would give us this deed of trust on this section of land."

The objection to this testimony was that the verbal agreement testified to had been merged into the written contract as evidenced by the deed of trust and chattel mortgage executed in consummation of it, which were complete on their face, and that the prior verbal negotiations and agreements could not be inquired into in absence of fraud, accident, or mistake. The contention is without merit. The testimony merely explained the purpose and consideration for which the written instruments were executed. The consideration of $1 recited in each instrument was not contractual, and proof by parol evidence of their true consideration was admissible, under the well-settled rule that a verbal contract not inconsistent with a writing may constitute an integral part or the whole consideration for the execution and delivery of the written instrument itself, and that the parol evidence rule has no ap-

plication to such verbal contract. N. Y. Life Ins. Co. v. Thomas, 47 Tex. Civ. App. 149, 104 S. W. 1074; Downey v. Hatter (Tex. Civ. App.) 48 S. W. 33; Martin v. Grocery Co. (Tex. Civ. App.) 66 S. W. 212. The verbal contract testified to simply constituted an integral part of the consideration for the execution and delivery of the written instruments in question, and therefore the rule stated above is applicable.

[3, 4] 2. But appellant insists in this connection that the verbal contract testified to and the written contract evidenced by the deed of trust and chattel mortgage are inconsistent in that the verbal contract was an absolute and unconditioned promise or agreement to carry the Caruthers indebtedness to its original maturity dates, while the deed of trust and chattel mortgage executed in consummation of it contained acceleration of payment provisions authorizing the bank to declare the notes due in case it felt itself insecure in its debt. The fallacy of this contention is that the record does not reveal any such verbal contract as contended for by appellant. The contract disclosed by the record was that the Ozona bank would reinstate the original contracts as evidenced by the notes and the several chattel mortgages securing them, the notes having been legally declared due under provisions of the mortgages, to their original status and to be performed as written, in consideration of the execution of the deed of trust and chattel mortgage as additional security for the notes. The original mortgages containing acceleration of payment clauses were by the verbal agreement continued in full force and effect, and certainly the verbal agreement not to declare the notes due and to extend time of payment could not vary or abrogate these written provisions. Both the deed of trust and chattel mortgage given in consideration of the verbal agreement contained similar provisions to the original mortgages in reference to acceleration of payment of the notes, and therefore the later writing did not in any manner vary or abrogate the terms of the original writings in that respect. So, when the whole contract and all its integral parts are construed together, which is the rule of construction applicable, it is clear that the parties did not intend by the verbal contract testified to to extend the time of payment of the notes to their original maturity dates without right or authority to declare all the notes due under provisions contained in all the written instruments for acts of mortgagor happening subsequent to the extension agreement.

[5, 6] 3. It is also insisted in this connection that the court erred in refusing to submit to the jury appellant's requested issue as to whether the Ozona bank did carry the notes to their original maturity dates as agreed, and also the refusal to charge the jury that the bank's action in taking charge of the live stock when it did was tantamount to declaring the notes due. These contentions become immaterial under our above holding that the contract authorized the bank to declare the indebtedness due because of acts of mortgagor happening subsequent thereto. The jury found in this connection that the bank took charge of the stock because of matters happening after the extension agreement was executed. So, if the bank's action in taking charge of the stock was tantamount to declaring the indebtedness due, then it was entirely justified in doing so under the undisputed evidence. Or, if it did not declare the notes due as it contends, but simply took charge of the stock because mortgagor had abandoned them leaving no one in charge of them, its action in so doing was, we think, legal and justified in order that its security might not be wasted or lost. 11 C. J. 554, 555, §§ 251-254.

[7, 8] 4. The jury found that the 200 acres in controversy constituted the homestead of the Carutherses when they executed the deed of trust thereon, but also found that in accepting the deed of trust and consenting to reinstate the Caruthers indebtedness and to carry same to original maturity dates, the bank relied upon the makers' homestead designation contained therein and in reliance thereon changed its position for the worse. Appellant contends that there was no evidence to sustain the findings on the estoppel issue, and that since the jury found the 200 acres to be the homestead, judgment should have been rendered for him. But the following evidence fully supports the jury's finding on the estoppel issue: Elam Dudley, who acted for the bank, testified that he saw a notice in the Barnhart paper that Caruthers had purchased a home there; that he asked him about it and Caruthers said it was true. Caruthers denied this conversation. Dudley also testified that both Caruthers and his wife told him at the time they executed the deed of trust that the place designated in Barnhart and where they were residing at the time was their homestead. The undisputed evidence shows that at the time the deed of trust was executed the Caruthers had moved a part of their household goods to the Barnhart residence and were occupying it, the instrument being executed there. Caruthers testified that he had not purchased the residence, but was renting it temporarily during the period his wife was confined with child there; that his wife had probably made some effort or discussed the purchase of the property, but that he had not agreed thereto. He also testified that after he moved to this residence he would stay there a part of the time and at the ranch on the 200 acres a part of the time, going back and forth as his business demanded; that he left his brother at the ranch in charge for him. The bank's offi-

cials testified that they found no one at the house on the 200 acres, and only a few pieces of furniture were left there. Clearly this evidence raised the issue of estoppel, which was a question for the jury, and these facts bring the case within the rule announced by this court in the recent case of Wootton v. Jones, 286 S. W. 687, from which we quote the following:

"A man may have two or more residences at the same time, but he cannot have more than one homestead. Hence, when he occupies as a residence a place in town and another in the country, under such circumstances that either may be his homestead according to his intention, it is evident that the physical facts alone cannot be relied upon as giving notice that either property is homestead as against the other. Clearly there is notice that one of the properties is homestead, and that both are not. It seems to us that such situation when it arises presents a most appropriate case for a homestead designation by the parties who have the right to resolve in their own minds the dilemma which the physical facts, created by their own conduct, present. This situation is closely analogous, if not on all fours, with that in which an excess over the homestead exemption is being occupied for homestead purposes. A designation in such case, made by the husband alone, is held, in the absence of fraud, to be binding on both spouses. Hanes v. Hanes (Tex. Com. App.) 239 S. W. 190. To hold that in the case of two residences, one of which could not, under the law, be claimed as homestead, the owners cannot estop themselves, by designation and representations, as to the homestead character of one of the residences, would deprive the owners of the right to raise money on the property which they have no intention to claim as homestead, and which the law, without such intention, does not invest with the homestead character. We hold that the evidence raised the issue of estoppel, and the request for its submission was erroneously denied."

The recent case of Llewellyn v. Bank, 265 S. W. 222, by this court, is also in point, and from which we quote the following:

"So long as the property is actually occupied and used as a home, its homestead character cannot be divested by intention of the occupants. But when the family has moved away from the property its continued character as a homestead rests in the mind of the parties claiming the homestead right. In order to divest the property of its homestead character by abandonment, the acquisition of another homestead is not essential. Abandonment is as effectually accomplished by moving off the property, with the intention not to occupy it again for homestead purposes. Hudgins v. Thompson, 109 Tex. 433, 211 S. W. 586.

"The authorities upon the subject, which are numerous, are uniform in holding that, where the husband and wife have moved away from the property, and its homestead character is preserved solely by their intention to return to it, they may estop themselves from asserting their homestead interest by representations made for the purpose of procuring a loan, to the effect that the property is no longer their homestead; the lender in such case believing such representations to be true, and relying upon them in making the loan and taking a lien upon the homestead property as security. Mortgage Co. v. Norton, 71 Tex. 683, 10 S. W. 301; Parrish v. Hawes, 95 Tex. 185, 66 S. W. 209; Sparks v. Loan Agency (Tex. Sup.) 19 S. W. 256; Haswell v. Forbes, 8 Tex. Civ. App. 82, 27 S. W. 566; Carden v. Short (Tex. Civ. App.) 31 S. W. 246 (W. R.); Mortgage Co. v. Scripture (Tex. Civ. App.) 40 S. W. 210; Loan Ass'n v. Guillemet, 15 Tex. Civ. App. 649, 40 S. W. 225; and many other cases."

[9] In connection with the homestead question appellant complains that the court erred in refusing to submit his requested issue to the jury as to whether Guss L. Caruthers was in possession of section 20 and the house thereon when he executed the deed of trust. Under the holdings in the above cited cases the issue was properly refused, because Caruthers' own testimony showed that he occupied on the date in question as his residence the place in Barnhart and also the land in controversy under circumstances that either might be his homestead, according to his intention. He clarified that dilemma by the homestead designation, and therefore the only issue involved was that of estoppel, on which the jury found against him. The cases cited by appellant which hold that no estoppel arises where party sought to be estopped is in actual possession of the homestead are not in point under the facts of this case, and this case is controlled by the rules of law above quoted.

[10, 11] 6. But appellant also insisted, in connection with the estoppel issue, that the court erred in refusing to submit to the jury his requested issues as to whether Gussie Lee Caruthers made the statement as to the homestead in the deed of trust to deceive or mislead the bank intending to do so. The following rule is well settled:

"It is not necessary to an equitable estoppel that the party should design to mislead, if his act was calculated to mislead another acting upon it in good faith, and exercising reasonable care and diligence under all the circumstances." Westbrook v. Guderian, 3 Tex. Civ. App. 406, 22 S. W. 59.

See, also, Blum v. Merchant, 58 Tex. 400; Steed v. Petty, 65 Tex. 490; Equitable Mortgage Co. v. Norton, 71 Tex. 683, 10 S. W. 301.

Or, as is said in Johnson v. Byler, 38 Tex. 606:

"A party is estopped whenever he has gained an undue advantage, and has caused his adversary a loss or injury."

Special issues covering the essential elements of an estoppel as applied to the facts pleaded and proved in this case were submitted to the jury, and the jury found upon sufficient evidence against appellant thereon.

[12, 13] 7. The contention that the deed of trust was void for want of consideration is

without merit. The basis for the contention is that since the verbal agreement to extend the time of payment of the notes to their original maturity dates was improperly admitted in evidence, because merged into the later writing, the deed of trust was otherwise without any proof of consideration for its execution. Under that circumstance the written instrument would itself purport a consideration for its execution. However, the case need not rest solely upon that presumption of law. The deed of trust was executed in consideration of the verbal agreement not to declare the Caruthers notes due, and to extend the time of their payment to original maturity dates, which agreement constitutes a valid consideration for the execution of the deed of trust and could be proved by parol evidence as hereinbefore held.

[14] 8. But appellant insists that this rule would not apply to Mrs. Caruthers, unless the promise to extend the time of payment of the notes was known to her, and that appellant's requested issue as to whether she knew of that promise to extend should have been submitted to the jury. Appellant neither pleaded nor proved that Mrs. Caruthers did not know of the promise to extend the time of payment of the Caruthers notes when she executed the deed of trust. In absence of pleading and proof of fraud, accident, or mistake in the execution of the deed of trust in respect to such lack of knowledge on the part of Mrs. Caruthers, she will be presumed to have known the purpose and consideration for the written contract which she executed. The deed of trust made no reference to the agreement to extend time of payment, but contained a specific description of the notes which it secured, and the notes recited that their original maturity dates had been extended to May 1 and 10, 1921. The proof is undisputed that these were the notes which the verbal promise or agreement extended the time of payment of, and there is no evidence that Mrs. Caruthers did not know of that promise and no evidence that she was defrauded or imposed upon in any way in that respect. The only fraud plead in connection with the deed of trust related to another matter, which is the next question raised.

[15, 16] 9. Appellant pleaded as follows:

"That if any promise was made by or upon behalf of the Ozona National Bank with the view of securing or for the purpose of securing the execution of said pretended deed of trust of February 26, 1921, such representation and promise was made for the sole purpose of inducing the execution of said deed of trust, and there was no intention at the time of making the same to comply therewith or to carry it out; and said promise or representation, if made, was not in fact complied with and was not carried out, but was broken in accordance with the design present at the time of the making of same, and this defendant therefore says that said deed of trust was procured through fraud."

Appellant complains that the court erred in refusing to submit to the jury his above plea of fraud, contending that the plea was sustained by circumstantial evidence. The only circumstance relied upon was the fact that the bank made the agreement to extend time of payment and took the deed of trust on February 26, 1921, and that on the following day, or at least three or four days thereafter, took charge of a part of the live stock covered by the mortgages. But the evidence is undisputed that the bank took charge of the stock for matters happening after the execution of the deed of trust, and because Caruthers abandoned the stock, leaving them in the pasture of one who notified the bank Caruthers had made no agreement with him to care for the stock and that they must be moved off his premises. While it is true that the issue of fraud may be raised by circumstantial evidence, still, the circumstance relied on in this case does not raise the issue of fraud pleaded as a matter of law, and therefore the court did not err in refusing to submit the requested issues.

We have carefully examined appellant's other propositions, and find that they are either disposed of by our above holdings herein, or that they are without merit and are overruled.

We find no error in the judgment, and it is affirmed in all things.

Affirmed.