## RICHARDS v. FRICK–REID SUPPLY CORPORATION.

### No. 14336.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 27, 1942.

Rehearing Denied April 3, 1942.

George W. Eddy, of Hillsboro, for appellant.

Rice M. Tilley and R. V. Nichols, both of Forth Worth, for appellee.

SPEER, Justice.

This is an appeal by K. S. Richards from an adverse judgment entered by a district court in Tarrant County, Texas, in a suit instituted by appellee Frick-Reid Supply Corporation against Richards, W. A. Drury and R. B. Fields.

The record is a complicated one; many transactions between parties, as well as those between other concerns not involved in the case, are necessarily in the record, making it difficult to state the case in few words. We shall content ourselves by referring briefly to those things essential to the appeal.

We are presented with convincing evidence of a gigantic legal struggle. The

battle field is strewn with grim evidence of the fury with which many attacks were made, and in each instance, against a worthy foe. No quarters were asked and none were given. Some blows were dangerously close to the belt-line region but the court called them fair. Both sides claim a glorious victory, but the decision was given to the appellee Frick-Reid Supply Corporation, and K. S. Richards has appealed.

The judgment, as entered, insofar as applicable to this appeal, cancelled the sale made by appellant Richards of certain electrical equipment under the provisions of a chattel mortgage lien, gave him judgment for $2,000, to be paid out of that amount paid into the treasury of the court by appellee and judgment against Fields for the amount found to be owing on unsecured debts and in favor of appellee for its debts against Fields, with foreclosure of its chattel mortgage lien on all the electrical equipment, including all other machinery used in connection with the oil well drilling rig.

Appellant gives forty-five reasons why the judgment is wrong. Points or propositions 12 to 22 challenge the sufficiency of appellee's pleadings to raise the issue of estoppel upon which judgment was entered.

By the pleadings, it is disclosed that R. B. Fields was indebted to appellee in a sum approximating $120,000, secured by a chattel mortgage lien on described oil well drilling equipment. Appellant Richards had previously sold to Fields some parts of the mortgaged property designated in the record as electrical equipment and received Fields' note for $25,000, secured by a first lien thereon. The note and lien were sold and assigned by appellant to another corporation not a party to this suit; appellant endorsed the note with recourse. Fields paid the obligation down to approximately $3,000, and became delinquent The holder sued Fields and appellant and recovered a money judgment for the amount unpaid, no effort was made to foreclose the mortgage lien. Fields, thereafter, paid $1,000 on the judgment and the creditor insisted over a period of weeks upon payment in full and was threatening execution against the property of appellant, since Fields was insolvent.

In appellee's amended petition, upon which the case was tried, it is alleged in substance that when the holder of the note and lien, executed by Fields to Richards, sued on the unpaid balance, and sought a money judgment only without asking for a foreclosure of the lien, the chattel mortgage lien was waived. That when Richards subsequently paid to the judgment creditor the unpaid balance and took from the creditor an assignment of the debt (in form of a judgment) and the original lien securing it, the debt was paid and the lien extinguished; that the judgment creditor having waived the lien, it conveyed by the assignment no better rights to the lien than it had and that Richards acquired no right thereunder to subsequently resort to the terms of the original mortgage lien instrument and sell out the property covered by the mortgage, at a sale advertised under its provisions. That under all said facts, Richards was estopped to deny the waiver of the lien and his asserted right to sell the property and buy it in at a subsequently advertised sale under the provisions of the mortgage.

More especially relating to the matters which gave rise to this suit, appellee alleged substantially that on about October 15th, 1940, after the judgment had been obtained by the holder of the Fields note against Richards and Fields, and before execution thereon or payment by Richards, appellant Richards requested appellee to pay off and satisfy said judgment and that it agreed to do so. That it tendered to the attorneys of the judgment creditor the amount necessary to satisfy the judgment, but the creditor declined to accept it because it was claimed that Richards had asserted his right to make payment. That Richards held an unsecured debt against Fields for about $8,000 and his desire to pay off the judgment debt and take an assignment of the mortgage lien was to enable him to acquire the mortgaged property at a nominal sum and reimburse his losses on the unsecured debt.

Relating more especially to appellee's plea of estoppel, this was alleged: "That after said judgment was paid off by the defendant Richards, negotiations continued between the defendant Richards and this plaintiff, to the end that the liens of each of the parties would be protected and to avoid any conflict of interest, and by telephone calls, conversations, communications and his acts and conduct generally, the defendant Richards agreed, expressly and impliedly, until further notice, to withhold and refrain from any attempted sale of any part of said property, if any such

right he had, and plaintiff agreed likewise to do so, and defendant Richards led plaintiff to believe that by his said acts and conduct, he would take no action to prejudice the rights of this plaintiff, knowing that if the said Richards' lien was prior in part to plaintiff's on any part of said property, that the only adequate protection plaintiff had was to buy in said property at any attempted sale by Richards, or to pay off the secured indebtedness, if any, due by defendant Fields to defendant Richards. But notwithstanding plaintiff trusted and reposed confidence in the defendant Richards, the said defendant secretly attempted to sell said property and withheld notice of such sale, betrayed the confidence of plaintiff, and secretly and quietly conducted a simulated sale on or about the 26th day of November, 1940, to the defendant W. A. Drewery or Drury." There are further allegations to the effect that if appellant had kept his promise not to attempt to make a sale of the property without giving appellee notice of such intention, it would have taken steps to protect its interests against such a contingency, and if it had known such a sale was being made it would have purchased the property at a much greater price than that bid by Drury for the benefit of Richards, and that the price so paid by it would have more than paid the amount unpaid on the judgment under which Richards claimed.

■ Appellant urged a special exception to those parts of the appellee's amended pleadings which attempted to plead an estoppel against him. The court overruled the exception. But the points raised here do not go to the action of the court in overruling the exception. They are leveled at the sufficiency of the pleading as a basis for the introduction of testimony in support of estoppel and the submission to the jury of issues on that point. But if it could be said that complaint is made of the order overruling the special exception, we think the pleadings are sufficient to form a basis for evidence to establish estoppel.

■ True, estoppel must be pleaded before a party may avail himself of it. But when the elements of estoppel are pleaded and relied upon, nothing is added to the plea by the conclusion that "the party was estopped to do the things he is charged with." The pleading is challenged because it was not specific, that it alleged no facts and did not serve to put appellant upon notice of what appellee would seek to prove upon the trial. Many cases are cited in support of the contention, which hold that the plea must be pleaded with reasonable certainty. Smith v. Roberts, Tex.Civ.App., 218 S.W. 27. No intendments are made in favor of the plea but must be pleaded with certainty and precision. Lloyd v. Singleton, Tex.Civ.App., 16 S.W.2d 891. And to the same effect is the rule announced in 17 Tex.Jur., p. 146, § 16.

■■ A party is never required to plead his evidence. It would have been improper pleading for appellee to have set out the testimony which he expected to introduce in support of the allegations of the "negotiations" between the parties; what was said in the "telephone calls" alleged; or to have detailed the "conversations" referred to in the pleadings; there were allegations of "communications and his (Richards') acts and conduct generally" by which he agreed to make no sale of the property under the asserted mortgage lien, without giving appellee notice of such intention. There were sufficient averments of appellee's reliance upon those matters, that it was deceived thereby to its hurt and those issues were submitted to the jury upon competent testimony. Whether or not facts proven establish estoppel are, of course, for determination by a jury when one is had. Glaser v. Henderson, Tex.Civ.App., 2 S.W.2d 987. The propositions which challenge the sufficiency of the pleadings on estoppel are overruled.

Points one to eleven complain of the submission of special issues 2, 3 and 4, principally upon the ground that there was no testimony to warrant their submission. In this connection it asserted that special issue 4 requires the jury to find a conclusion and not a fact.

Special issue No. 2 reads: "Do you find from a preponderance of the evidence that the defendant Richards by his course of conduct between October 19th, 1940, and November 26th, 1940, lead plaintiff Frick-Reid Supply Corporation reasonably to believe that he would not attempt to foreclose his alleged mortgage on the electrical equipment in question without first giving actual notice to plaintiff?" The answer was, "Yes".

No. 3 was conditioned in such way as not to require an answer if No. 2 should be answered, "No". Answered as it was, the jury was requested to answer No. 3,

which reads: "Do you find from a preponderance of the evidence that the plaintiff, Frick-Reid Supply Corporation, relied upon the conduct of the said Richards to the extent that it in good faith believed that no action would be taken by the defendant Richards with reference to selling or foreclosing his alleged mortgage on the electrical equipment in question without first giving actual notices to the plaintiff thereof?" The answer was, "Yes".

Special issue No. 4 was: "Do you find from a preponderance of the evidence that plaintiff, Frick-Reid Supply Corporation, would have protected its alleged lien on the electrical equipment in question but for its belief that no sale would be attempted by defendant Richards without actual notice to it?" The issue was answered, "Yes".

■■ It is too well settled in this state to require citation of authorities that if an issue of fact, supported by pleadings, is raised by competent testimony of probative force, it is the duty of the trial court to submit it to the jury. It is equally well settled that if the testimony is conflicting on the point, the appellate court will not disturb the jury finding, except in rare cases, such as are not involved here. There is substantial testimony in this record to the effect that prior to October 17th, 1940, appellant was endeavoring to induce appellee to pay off the balance of the unsatisfied judgment against him and Fields, the unpaid part being about $2,000. Appellee from time to time advised appellant that it wanted to protect its lien against Fields and would look into the whole thing and would confer further with him. A local attorney had the judgment for collection and was threatening to levy execution on Richards' property. A representative of appellee told the attorney on October 18th, 1940, that he felt sure appellee would pay the judgment to protect its lien; the representative of appellee procured on October 19th, the amount necessary to be paid on the judgment and sent it to appellee's home office at Tulsa, Oklahoma, with request for a check to cover. Appellant learned from the judgment holder, on the same day, that appellee was going to make payment as soon as the check returned from Tulsa. Appellant left and returned in about a half hour with a cashier's check for the amount to make payment, and the holder of the judgment accepted it. The local representative of appellee was advised

immediately that he need not get the check from Tulsa for Richards had taken up the balance. Appellant went to Tulsa on November 7th, 1940, and talked to appellee about the situation. Representatives told appellant that it looked like they would have to repay the amount already paid by him on the judgment, but no tender of the amount was made. They discussed their several rights, began negotiations looking to forming some kind of a corporation by putting in the machinery and some oil contracts, along with some drilling contracts which appellant could get, through which a corporation would be formed and each could realize as much as possible out of the property involved. Appellant further testified that there were no definite statements made at the November 7th meeting, except those leading to the probability of working with Frick-Reid so they could get all their money and he (appellant) could get his. He said that he came away from Tulsa with the understanding that representatives of appellee would come to Fort Worth at an early date for further conferences. He had a wire on November 9th that came to his office while he was out of town; it was from appellee and asked that the next meeting be postponed until appellant returned to the City and asked him to notify them as to a convenient date, at which time appellee would send a representative for further discussions. A letter came to appellant's office on November 16th, dated November 15th (Friday), stating that its representative would be in Fort Worth on the following Wednesday to continue their discussions. Appellant was out of the office and his bookkeeper answered by wire that appellant would not return until the end of the week. Appellant's diary showed that he was in his office on November 16th (the date on which appellee's letter came to his office from Tulsa). Appellant also testified that he was in his office at Fort Worth on November 17th, and left on that day for Oklahoma City. He said that when he had previously left his office in Fort Worth on November 11th, he told his manager that he was going to Houston to look after the rig. He engaged counsel at Houston on the 12th, and instructed him to advertise and sell the machinery. The record does not disclose that appellant ever made any further effort to confer with appellee's representatives after he came away from Tulsa with the understanding that they would try to work out a plan by

which all would realize as much as possible out of the machinery.

■ The foregoing summary of the facts is gleaned from a great deal of evidence, largely by appellant, and, in the main, is relied upon by appellee as tending to show appellant's acts and conduct, by conversations, telephone calls, telegrams, correspondence, acts and conduct, to raise the issues submitted by the court. We consider them sufficient to take the issue to the jury, and the verdict thereon was as indicated above in the quoted special issues and their answers. The propositions asserting that there was no evidence to warrant their submission must be overruled.

■ ■ We also overrule the contention that special issue No. 4 called for the jury to give a conclusion rather than find facts. There is an abundance of evidence in the record to the effect that appellee considered that it would have to pay the balance on the judgment against appellant and desired to do so, to protect its own lien; that because of the understanding between the parties they were endeavoring to "work it out", and that because of appellant's acts, somewhat detailed above, appellee changed its position for the worse. These are elements of estoppel, and, taken together with the answers to special issues 2 and 3, the court applied that rule in entering judgment.

■ Twenty-third to twenty-sixth points raise the proposition that the judgment against appellant canceling the sale of the mortgaged property under the terms of the chattel mortgage was error, since he did only what he was authorized to do under the terms of the instrument. As an abstract proposition of law it is sound, but conceding, for argument's sake, that he had the right to thus proceed, it must be borne in mind that at a time when he had that right and while certain rights of appellee existed, his acts and conduct toward appellee were such that he could, and, as we believe, did estop himself from pursuing that course without notice to appellee. It is unnecessary to discuss the rules governing estoppel in matters which may or may not arise in the future, for when appellant's acts and conduct relating to what he would or would not do with reference to advertising and selling the mortgaged property without notice to appellee took place in this case, his rights under the mortgage had already accrued. See Longbotham v. Ley, Tex.Civ.App., 47 S.W.2d 1109, writ refused. It seems to be the settled rule in this state that if one party, by words or conduct, induces a reasonable belief in the mind of another that he will do a thing or refrain from doing something except under certain limitations, and that other person is thereby induced to subsequently act to his own hurt, the former will be estopped to breach an implied agreement, arising from his words or conduct. Hammonds v. Flewellen, Tex.Civ.App., 48 S.W.2d 813; F. L. Shaw Co. v. Dalton Adding Machine Co., Tex.Civ.App., 211 S. W. 833; 10 R.C.L. 689, § 19. We overrule the contention thus raised.

■ Points 27 to 31 challenge the action of the court in permitting the introduction of testimony by appellee, tending to show that it was the intention of Fields and appellee, at the time the mortgage was given, that it should cover all of the property in controversy. It is urged in this connection, (1) that there were no pleadings by appellee seeking reformation of the instrument, and (2) no plea of mutual mistake. The contention presents a correct principle relating to the introduction of evidence and the numerous authorities cited in the brief support it. But viewing this controversy as we do, we think that any error shown was harmless, for the reasons: First, the description of the property in appellee's mortgage was rather general in that the several units did not have detailed descriptions, but states in the beginning of the description that it covers a certain Diesel and Electrical Equipment located at a given place in a named county of the State, and is more definitely described by such terms as, "2—275—300 HP Atlas Imperial Full Diesels, 9"x10¼"," "8 Cylinder, #11112 and #11257 respectively", and "1—330 KW—350 volt Allis-Chalmers Generator", and other units were similarly described. While the mortgage of appellant gave similar descriptions of the heavy units and in addition provided to cover connections, bases, housing and so on, in connection with generators using such somewhat technical language as this: "Differentially wound D. C. generator, separately excited with double shaft extension for direct connection to exciter and also to a stub shaft for V belt pulley, drip proof covers and class B insulation on the armature". In the second place, appellant said

he saw the recordation of the mortgage to appellee but that some parts of it he could not identify as that covered by his mortgage. It is evident from the whole record that he recognized the fact that it was at least an attempt upon the part of Fields to execute a second mortgage on the property by reason of the fact that prior to the time he paid off the judgment to prevent execution against him, he was striving very hard to induce appellee to satisfy that judgment to protect its second lien upon the property, and he now claims, appellee had no valid mortgage. We overrule the contention that reversible error was committed by the court in admitting the testimony.

Points 32 to 36 raise the question of jury misconduct. The record reveals that by means of the alleged improper sale by appellant of the mortgaged property without notice to appellant, which he is claimed to be estopped from doing, appellant was enabled to purchase the property for $2,000 when it was worth several thousand dollars. In arriving at the value of the property so sold, it is claimed that the amount was determined by the jury by adding together the estimates of each juror and dividing the sum by twelve. There is some evidence by jurors that they did make such calculation but there was no agreement beforehand to be bound by the result, and that it was done as a basis for later determining the answer to the issue; that the result was discussed afterwards and finally they gave $12,000 as their answer. The identical amount of the value of that property was not controlling in this case, as amounts so frequently are when juries render verdicts for damages. The facts do not reflect that reversible error is shown. 31 Tex.Jur. p. 53, § 46. In these propositions it is further contended that some of the jurors based their answers as to value of the mortgaged property upon a statement made by another juror that the effect of their answers on the judgment would be the same without regard to how they answered the issue on the value of the mortgaged property. The estimates of the jurors ranged from $6,000 to $20,000, and while it is never safe to say that a juror may consider the effect of his answer upon the judgment to be entered, so long as that value showed a substantial amount over that paid by appellant in this case, it is even true that the value so fixed by the jury would not affect the judgment of the court. The propositions are overruled.

In the beginning of the trial it was stipulated that appellee had tendered to appellant the $2,000 he had paid out to satisfy the judgment against himself and Fields. While appellant was on the stand as a witness and was testifying concerning his acts in making the sale and the purchase of the property, counsel for appellee withdrew from his pockets a large roll of currency and told appellant it contained $2,000 and asked him if he would accept it, and, of course, he rejected it. This display and demonstration are complained of in propositions 38 and 39, as being prejudicial to the rights of appellant. It was an unnecessary gesture, but obviously appellant's attitude prompted it. This opinion does not reflect all the matters and things in the record which are not in keeping with perfect decorum. The record is replete with out-breaks of intense zeal and often approached unfortunate personalities. Certainly the latter have no place in the trial of a case.

Further emphasizing some of the things referred to above, points 39 to 43 complain of improper arguments by counsel for appellee. It would unnecessarily extend this opinion to bring forward the several matters complained of, and the preceding statements of opposing counsel which are set out to justify the offending arguments. In some instances it is asserted by appellant that arguments made were not justified by the nature of the testimony being discussed; but we have reviewed it and find that the deductions drawn by counsel were not unreasonable nor unfair, although they did result in rather harsh conclusions. Other arguments pointed out in these propositions are presented by bills of exception which, when considered in connection with the qualifications placed thereon by the trial court, present no error. We perhaps should add just here, however, that criminations and recriminations by counsel of each other or of adverse witnesses are seldom, if ever, to be tolerated by the courts; in such cases it becomes the duty of the trial court to curb those propensities in such manner as it deems proper to accomplish the proper end. Courts are slow to penalize litigants because of the acts of their attorneys, but it sometimes becomes necessary. We are not disposed to collate a great array of authorities bear-

ing upon the extent to which attorneys may go in a fair discussion of the evidence and issues in a case, but the following will suffice: Western Reserve Life Ins. Co. v. Burchfield, Tex.Civ.App., 149 S.W.2d 125; Carson v. Amberson, Tex.Civ.App., 148 S. W.2d 972. (In both the cited cases writs of error were denied with the notation that judgment was correct.) Ordinarily reversal will not be granted for improper argument unless the argument of opposing counsel is before the court. Pietch v. United States, 10 Cir., 110 F.2d 817, 129 A. L.R. 563, writ of certiorari denied 310 U.S. 648, 60 S.Ct. 1100, 84 L.Ed. 1414; Koenig v. Grand Lodge of Order of Sons of Herman, Tex.Civ.App., 148 S.W.2d 222, writ denied, judgment correct.

■ We see no error in the submission of special issue No. 5, which inquired as to the value of electrical equipment sold by Richards, which matter is in some respects material to the points involved in this suit. The objection is raised by appellee's 44th and 45th points. As above indicated, the precise value was not controlling in the controversy, but unless it did have a value substantially greater than that for which it sold, appellee would have suffered no injury, even if the sale in the manner complained of by it had been unauthorized— that is, assuming that appellant had estopped himself from selling it out under the mortgage without notice to appellee.

For the reasons herein set out, we overrule all assignments of error and order that the judgment of the trial court be and it is hereby affirmed.

### On Motion for Rehearing.

Appellant K. S. Richards has filed a motion for rehearing in this case and urgently insists that our conclusions expressed in the original opinion, contrary to his contentions, are all wrong. We stated in the opinion substantially that the picture of the suit drawn by us was inadequate, but in the interest of brevity we refrained from saying many things which perhaps should have been said.

■ However, at the conclusion of the third paragraph from the bottom of the opinion we used this language: "Ordinarily reversal will not be granted for improper argument unless the argument of opposing counsel is before the court." We cited cases from the United States Supreme Court so holding. The rule announced appears to be correct in Federal procedure, but we think it not applicable to our state practice; we therefore withdraw from the opinion the quoted statement, and leave stand other reasons assigned for overruling the assigned error. We know of no decided case in this state which goes as far as the rule announced by us. It is easy to perceive the harmful statements that could be indulged by counsel in a closing argument when he knows opposing counsel's argument has not been taken down and cannot be brought before the appellate court.

We believe we should call attention to what was said in the opinion about the duty of trial courts to curb the propensities of zealous counsel during the trial. No reflection upon the trial court in this case was intended by us, but what was said is more complimentary than critical. The record in this case shows that while appellee's counsel was making his argument, counsel for appellant made many objections and the former complained to the court about the frequent interruptions. The court appears to have stopped the proceedings and called counsel of both parties to bar, and after a short conference, the nature of which was not reported, the court said: "All right, now let's start all over." So far as is disclosed by the record, none of the things complained of on appeal took place thereafter. The foregoing observation is not prompted by what either party litigant has said in the motion for rehearing nor in reply, but we believe that in fairness to the trial court it should be said.

We have carefully reviewed appellant's motion and believing we have properly disposed of this appeal, it is overruled.