### H. M. HASWELL V. HENRY FORBES ET AL.

#### No. 453.

1. **Homestead—Charge of Court.**—Under the Constitution, article 16, section 51, providing that in order to invest property with the homestead character it must be used for the purpose of a home, or as a place to exercise the calling or business of the head of a family, it is error to charge that "a tract of land upon which the family live, or which is used openly and notoriously as a means of support and maintenance for the family, even if the family live on another tract, is a home."

2. **Homestead—Separate Tracts.**—When a lot or tract of land is separate from the lot or tract on which the residence of the family is situated, to invest it with the homestead character it is not enough that it be used as "a means of support and maintenance for the family;" but it must be used in connection with the residence, and appurtenant thereto.

3. **Same—Estoppel.**—If representations made by mortgagors are sufficient to estop them to claim homestead as against the mortgagee without notice, another who, with notice, purchases at the foreclosure sale, can avail himself of the innocent standing of the mortgagee.

4. **Same.**—If a person own more than one tract of land and part of it is not in the actual possession of the owner and is not used openly and notoriously in connection with his home for the comfort and convenience of his family, and the mortgagee has no notice of its homestead character, if any, and is not put upon inquiry, then the

owner making representations that 'it was not a homestead would be estopped from claiming it as a homestead.

ERROR from Grayson.   Tried below before Hon. P. B. MUSE.

*W. L. Williams* and *Don A. Bliss*, for plaintiff in error.—1. The mere use of the rents of a tract of land for the support of the family will not make such tract the homestead.   In order to be a homestead, the land must be used for the purpose of a home, or as a place to exercise the calling or business of the head of the family, or must be used in connection with and appurtenant to the land upon which the family actually resides and owns.   Oppenheimer v. Fritter, 79 Texas, 99; Iken v. Olenick, 42 Texas, 195; Keith v. Hyndman, 57 Texas, 425; Evans v. Womack, 48 Texas, 230; Achilles v. Willis, 81 Texas, 169; Crabtree v. Whiteselle, 65 Texas, 111; Rogers v. Blum, 78 Texas, 530; Railway v. Winter, 44 Texas, 597; Moreland v. Barnhart, 44 Texas, 275.

2.  When a party makes a false representation to another with the intention that such representation shall be relied and acted upon by the other, and the party to whom the representation is made is deceived thereby and does rely and act upon the same, and thereby puts himself in what would be a worse position, if the party making the representation were allowed to deny the truth thereof, then the party who made the representation is estopped to deny the truth thereof, even though such representation was innocently made and with no intention to deceive.   Loper v. Robinson, 54 Texas, 510; Hickey v. Behrens, 75 Texas, 488; Fitzgerald v. Turner, 43 Texas, 79; Mortgage Co. v. Norton, 71 Texas, 683; Loan Co. v. Blalock, 76 Texas, 85; Cravens v. Booth, 8 Texas, 243; Bank v. Bank, 50 N. Y., 575; Smyth v. Monroe, 84 N. Y., 354; 2 Pom. Eq. Jur., secs. 803, 805, 814; 2 Herm. on Estop., sec. 771.

3.  If A. M. Crow and wife were estopped to deny the validity of the mortgage under which H. M. Haswell claims, as to the mortgagee, the benefit of this estoppel inures to Haswell, even if at the time he purchased the land, or when the mortgage was executed, he (Haswell) had notice that the land was the homestead of Crow and wife.   Ellis v. Singletary, 45 Texas, 41; Jackson v. McChesney, 7 Cow., 360; Varick v. Briggs, 6 Paige, 323; Bumpus v. Platner, 1 Johns. Ch., 213; Fletcher v. Peck, 6 Cranch, 87; 2 Pom. Eq. Jur., secs. 754, 813, and authorities cited.

On notice:   Iken v. Olenick, 57 Texas, 201; Keith v. Hyndman, 57 Texas, 425; Evans v. Womack, 48 Texas, 230; Crabtree v. Whiteselle, 65 Texas, 111; Achilles v. Willis, 81 Texas, 169; Blum v. Rogers, 78 Texas, 530; Archibald v. Jacobs, 69 Texas, 248; Oppenheimer v. Fritter, 79 Texas, 99; Medlenka v. Downing, 59 Texas, 32; Loan Co. v. Blalock, 76 Texas, 85; Moreland v. Barnhart, 44 Texas, 275.

On estoppel:   Mortgage Co. v. Norton, 71 Texas, 683; Loan Co. v. Blalock, 76 Texas, 85; Hickey v. Behrens, 75 Texas, 488; Schwartz v.

Bank, 67 Texas, 218; Ryan v. Maxey, 43 Texas, 192; Fitzgerald v. Turner, 43 Texas, 87; Cravens v. Booth, 8 Texas, 243; Loper v. Robinson, 54 Texas, 510; Bank v. Bank, 50 N. Y., 575; 2 Pom. Eq. Jur., secs. 803, 805, 814; 2 Herm. on Estop., sec. 771.

No brief for defendants in error reached the Reporter.

RAINEY, ASSOCIATE JUSTICE.—Plaintiff in error brought this suit to recover of defendants in error 160 acres of land. The land was bought by plaintiff in error at a sale under a trust deed executed by Crow and wife to secure a mortgage company for money borrowed. The defense to the action was homestead exemption. Plaintiff in error was cast in the suit, and complains of the charge of the court in defining what was required to constitute a homestead, as follows: "The homestead of a family not in a town or city shall consist of not more than 200 acres of land, which may be in one or more parcels, with the improvements thereon. A tract of land upon which the family live, or which is used openly and notoriously *as a means of support and maintenance for the family, even if the family live on another tract,* is a home."
In applying the law to the facts, the court practically followed this definition throughout his charge without qualification.

The evidence shows, "that the land in controversy was deeded to Mrs. S. F. Crow by her father in 1878; that she and her husband moved onto the land and used it as their home from that time until 1883, when they moved to the city of Denison, where her husband went into business, and where they remained until her husband failed in business, about two years afterwards. They then moved to the town of Pottsboro, in the neighborhood of the land, where they resided about a year. They then purchased and moved to the Culberson place, a tract containing 146 acres of land, and separated from the land in dispute by the intervening farm of John Reddick, containing 80 acres. The Culberson place was inclosed and in cultivation and had a house on it, in which the Crows lived. They moved to the Culberson place in 1886 and remained there until 1887, and then moved to the city of Sherman, where they lived during 1887; they then returned to Denison, where they remained until 1888. During all the time the Crows were away from the land in dispute they kept it rented out, using the rents, as Mrs. Crow testified, for the support of the family. They reserved, however, all the time, as Mrs. Crow testified, the meadow, and pastured some stock on the place, Mrs. Crow generally having the hay on the meadow put up on shares, and having a few head of stock in the pasture.

The deed of trust under which plaintiff in error claims was executed and delivered by the Crows to the mortgage company while the Crows were living on the Culberson place; that is, in the fall of 1886. During the summer of that year A. M. Crow had bought from his tenant an 18-acre oat crop, and had harvested it himself. At that time, that

is, in 1886, when the mortgage was executed, Mrs. Crow owned another tract of land containing 150 acres, inherited by her from her father's estate, which was inclosed—a little in cultivation, the balance in pasture. The Crows did not rent out this tract, but used it themselves, keeping stock in it as a pasture. This tract was separated from the Culberson place by a 10-acre strip 75 yards broad, belonging to another party. The following diagram shows the relative positions and extent of the different tracts:

Was the definition given correct? The Constitution of this State, article 16, section 51, provides, that in order to invest property with the homestead character it must be used for the purpose of a home, or as a place to exercise the calling or business of the head of a family. The Revised Statutes, article 2336, follows the language of the Constitution in this respect. What it takes to constitute a homestead has been often adjudicated by our Supreme Court.

In Philleo v. Smally, 23 Texas, 502, Justice Bell says: "A man's homestead must be his place of residence; the place where he lives; the place where he usually sleeps and eats; where he surrounds himself with the ordinary insignia of home, and where he may enjoy its immunities and privacy."

In the case of Railway v. Winter, 44 Texas, 611, its meaning is construed to be still broader. Justice Roberts there says: "The object of the Constitution was to protect the house and the farm, tanyard, mill, gin, or whatever had been used *in connection* with the residence to make a support for the family."

When a lot or tract of land is separate from the lot or tract on which the residence of the family is situated, to invest it with the

homestead character it is not enough that it be used as "a means of support and maintenance for the family," but it must be used in connection with the residence and appurtenant thereto. The thought is well expressed in Keith v. Hyndman, 57 Texas, 431. The court says: "It is not intended by our present Constitution, any more than by those which preceded it, that the use which might be made of lots, though conducing to the advantage of the family and its support—as for farm, fruit, or vegetable products—constitutes such lots a part of the homestead; but in order to constitute them a part of the homestead, the cultivation and use made of the lots which furnish such products as are above suggested must be in such mode and manner as are consistent with the premises in question being appurtenant to a part of the home established."

In discussing this principle in the case of Blum v. Rogers, 78 Texas, 530, where the question was, whether or not a lot in town, not connected with the residence lot, but occasionally used for family use, was exempt, Justice Gaines said: "The principal use to which they are subjected must be looked to, and where, as evidently appears in this case, the main purpose to which the property is devoted is to bring in an income, and the family use is not only secondary and subordinate, but of trivial importance, the property should no longer be deemed a part of the homestead." This principle applies with equal force to rural homesteads.

Under the charge of the court, a piece of land separate from the home tract, it matters not how used, whether in common with the home or not, if it produced revenue and the revenue contributed to the use of the family's support, it would constitute a homestead, and be exempt from mortgage and forced sale. We think this definition too broad, and gave the jury too much latitude in determining the issue of homestead. It was in effect telling them they could look alone to the income derived, irrespective of its use. Making that the criterion, the jury could not help rendering a verdict for defendants in error. Under the facts of this case, the court under an appropriate instruction should have submitted to the jury for their determination whether or not the land in controversy was used in connection with the home, for the comfort and convenience of the family.

The court in the seventh paragraph of its charge in effect told the jury, that if it was known to plaintiff in error that the land in controversy was the homestead of Crow and wife, or he had such notice as would put him upon inquiry, and by inquiry he could have ascertained that fact, then he would not be entitled to recover.

The court further charged in paragraph eight, in effect, that the only question for their consideration was, whether or not the land was the homestead of Crow and wife, and whether or not plaintiff in error was an innocent purchaser. These charges, when viewed in the light of the evidence, did not present the issues properly to the jury, and were not a proper application of the law to the facts. When Crow

and wife made application to the mortgage company for the loan of the money, they were residing on the 146 acres of land—the Culberson tract—and using it as a home, and also using in common therewith a 150-acre tract. In order to secure the loan, Crow and wife made affidavit as follows: "That no portion of the above described property is our homestead, or the homestead of any other person or persons; that our homestead upon which we reside, and to which our title is perfect, consists of 300 acres in this county, which does not in any way join this land, nor is this land in any way used in connection with our homestead." Plaintiff in error pleaded, that by reason of these facts Crow and wife were estopped from setting up homestead exemption.

It will be noted that the charge of the court made the right of plaintiff in error to the land depend entirely upon his knowledge of the land being homestead, or upon what he might have ascertained upon inquiry, if he had had sufficient notice to have put him upon inquiry. This we think was error. If the representations made by Crow and wife were sufficient to estop them from availing themselves of the plea of homestead exemption, then it matters not what notice·plaintiff in error had; he can avail himself of the innocent standing of the mortgage company. In order to cover this phase of the case, the plaintiff in error requested the court to give two special charges, which were refused, viz:

"1. If you believe from the evidence that the defendants, A. M. and Sarah F. Crow, signed and swore to the application for loan read to you in evidence, for the purpose of obtaining a loan of money upon the land in controversy; and if you believe from the evidence that the loan company, or its agents, acted upon the belief that the statements made in the application were true, and loaned money upon the belief in the truth of such statements, then defendants, A. M. and Sarah F. Crow, will be bound by such statements, although they may be untrue, unless the evidence shows that the party making the loan, or its agent, had notice that the statements were false, or had notice of such facts as would have caused a prudent man desiring to know the truth to have inquired into the facts, and that no proper inquiry was made into such facts.

"2. The statements made in the application would not be sufficient to bind the defendants, A. M. Crow and wife, if they were at the time in the actual use of the premises as a homestead; but such use must be such as would notify a prudent man that they were at the time a homestead; and the application of the rents of the land to the support of the family while not actually residing thereon, would not be such use as to avoid the statements made in the application."

These two special charges taken together embody correct principles of law applicable to this case, and should have been given by the court, as they were not embodied in his general charge. We understand that under the Constitution a homestead can not be mortgaged,

and our Supreme Court has held that the statement of the parties that the land is not their homestead will not estop, if at the time the owners were in the actual possession and using it as a home. "Every person dealing with land must take notice of an actual, open, and exclusive possession, and where this, concurring with interest in the possession, makes it homestead, the lender stands charged with notice of that fact, it matters not what declarations to the contrary the borrower may make." Loan Co. v. Blalock, 76 Texas, 85.

If, on the other hand, parties own more than one tract, and part of it is not in the actual possession of the owner, and is not used openly and notoriously in connection with his home for the comfort and convenience of his family, and the mortgagee has no notice of its homestead character, if any, and is not put upon inquiry, then the owner making such representations would be estopped from claiming it as a homestead. Whether or not such facts exist as to constitute an estoppel is a question for the jury, and should have been submitted under appropriate instructions. Mortgage Co. v. Norton, 71 Texas, 683.

The other assignments of error relate to the refusal of the court to grant a new trial, because the verdict was contrary to the evidence. In view of another trial, we will not discuss the evidence.

For the reasons above given, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered June 27, 1894.