BLACKWELL et al. v. LASSETER et al. (No. 858.)

(Court of Civil Appeals of Texas. El Paso. May 3, 1918. Rehearing Denied May 23, 1918.)

1. HOMESTEAD ⊜⇒35—ESSENTIALS—USE.
To impress farm with homestead character, under Const. art. 16, § 51, the land must have been used for the purposes of a home.

2. HOMESTEAD ⊜⇒31 — ESSENTIALS — INTENTION.
Intention of the parties to make a farm their homestead is insufficient to impress a tract of land with a homestead character, when such land is detached from the premises on which the rural home of the parties is situated.

3. HOMESTEAD ⊜⇒35—ESSENTIALS—CHARACTER OF USE.
Since it is the principal use which must be looked to, to determine whether land is a homestead, the mere use on rural homestead of grubbed-out stumps taken from a detached tract did not show use of such tract as a homestead; the principal purpose of removing them being to clear the land for cultivation.

4. HOMESTEAD ⊜⇒38—ESSENTIALS—DESIGNATION.
Land in controversy, being detached from the tract upon which the home is located, cannot become a part of the homestead by anything less than would be necessary to designate the homestead originally.

5. HOMESTEAD ⊜⇒35 — ESSENTIALS — EXTENT OF USE.
The fact that a 160-acre tract of land was devoted to bringing in an income used for the support of the family living on another tract did not alone constitute a user of the 160-acre tract for the purpose of a home.

6. HOMESTEAD ⊜⇒168—TEMPORARY RENTING.
The constitutional proviso as to temporary renting of homestead does not apply until after the homestead character is once established.

7. HOMESTEAD ⊜⇒57(3) — EVIDENCE — SUFFICIENCY.
Evidence held insufficient to establish homestead character of detached tract, income from which was used for support of the family.

Appeal from District Court, Mitchell County; W. W. Beall, Judge.

Suit by M. E. Lasseter and husband

against J. Blackwell and others. Judgment for plaintiffs, and defendants appeal. Reversed and rendered.

G. N. Harrison and C. R. Miller, both of Brownwood, and Shepherd & Sandusky, of Colorado, Tex., for appellants. M. Carter, T. R. Smith, and Royall G. Smith, all of Colorado, Tex., for appellees.

## Statement of Case.

HIGGINS, J. M. E. Lasseter and her husband, John E. Lasseter, appellees brought this suit against appellants to recover a 160-acre tract of land. The appellants claim title under a deed of trust covering the premises, dated April 1, 1912, executed by John E. Lasseter to J. E. Hooper, trustee, for Floyd Shock, beneficiary, and foreclosure proceedings thereunder. Upon the view which we have of the case, it is necessary only to pass upon the assignment complaining of the refusal of a peremptory instruction in favor of defendants.

The jury found that on April 1, 1912, the land in controversy was a part of the rural homestead of the Lasseters, and judgment in their favor was rendered upon this finding. If there was no evidence to support this finding, the peremptory instruction should have been given. In its aspect most favorable to the Lasseters, the evidence discloses the following facts:

The land in controversy was conveyed to John E. Lasseter on December 16, 1903. On October 17, 1906, he acquired a 31-acre tract immediately adjoining the town of Westbrook, in Mitchell county. Prior to 1907, the Lasseters with their children resided for many years in Williamson county, where John E. Lasseter was engaged in farming upon rented land. He resided upon the land so rented. When he acquired the 160-acre tract of land, there was about 60 acres prepared for cultivation. There was a three-room house, cribs, and barn on it. The house was wrecked by storm, and Lasseter tore it down and built a barn out of it. He also put up another house to replace the wrecked one. This was done prior to their removal to Mitchell county, which they did in 1906.

Just after moving to Mitchell county, John Lasseter bought the 31-acre tract. It was then raw land. He put some of it in cultivation, built a house, crib, and smokehouse thereon; also put a well and cistern on it. The 160-acre tract is about 4 miles distant from the 31-acre tract as the road runs, and about 3 miles in a direct line. The Lasseters never lived upon the 160-acre tract, and when they came to Mitchell county they resided in the town of Westbrook for about a month, until the house was built on the 31-acre tract. Upon its completion, they moved therein, and have lived there ever since. This house is just across the street from the platted portion of Westbrook. Two, three, or four years after moving to Mitchell county, John Lasseter hired Mexicans and grubbed some of the land upon the 160-acre tract, and eventually there was about 100 or 125 acres in cultivation. The grubs he hauled to his home and used them. The 160-acre tract prior to, and all times subsequent to, the time the Lasseters came to Mitchell county, was leased to tenants for one-third of the grain and feed crops, and one-fourth of the cotton. The cotton was marketed by the tenants, who accounted to Lasseter for his share of the proceeds. His share of the grain and feed crops Lasseter caused to be hauled to his home on the 31-acre tract, where he used it to feed his stock. The entire proceeds of the 160-acre tract were used by Lasseter to support himself and family.

Lasseter also owned a 320-acre tract of land in Mitchell county, which he rented in the same manner and used the proceeds thereof for like purpose. This 320-acre tract lies 2 miles west of the 160-acre tract. John Lasseter testified that he at all times claimed the 160-acre tract as his homestead. At the time of the trial, in 1917, John Lasseter was 70 years old. For several years prior to his removal to Mitchell county, the health of himself and wife had been bad, and the evidence shows that, since moving to Mitchell county, the infirmities incident to his age and health were such that he was physically unable to actively engage in farming operations. The evidence is sufficient to show that his physical condition was such that the only way he could use the 160-acre tract for the support of himself and family was to rent it and use the proceeds for such support.

Prior to the removal to Mitchell county, the Hamilton-Lasseter Hardware Company, a corporation, was organized by John Lasseter and his son, Z. T. Lasseter, and one Hamilton. This company did a mercantile business in Westbrook. John Lasseter and Hamilton each owned $1,700 of its capital stock. Z. T. Lasseter owned $1,600 of the stock. For about a year after John Lasseter came to Mitchell county, he and Z. T. Lasseter superintended and ran the business of the corporation, though John Lasseter received nothing from the corporation in salary or dividends while he was so engaged. In 1908 John Lasseter sold his stock in the corporation to L. E. Lasseter. Thereafter John Lasseter continued to work for the corporation, but not under any regular contract of employment. It seems that he acted as a salesman whenever he felt like assisting, and for the services which he rendered in that way he was allowed groceries and supplies from the store. His connection appears to have been a sort of a mutual co-operative relation.

On November 28, 1907, Lasseter and his wife executed, and on the next day duly recorded, a homestead designation, wherein the

31-acre and 160-acre tracts were designated as their homestead. On May 13, 1914, John Lasseter executed a deed of trust on the 320-acre tract to R. Y. Prigmore, trustee, for Monnig Dry Goods Company, beneficiary. In this instrument he designated the 31-acre tract of land as his homestead and declared that same was all of the property claimed by him to be exempt under the law. Upon the trial, it was a contested issue whether the 31 acres was a rural or urban homestead. The jury found it to be rural, and no issue is made on this appeal as to the correctness of this finding.

### Opinion.

[1] To impress the 160-acre tract with the homestead character, it must, in the language of the Constitution, have been "used for the purposes of a home." Section 51, art. 16, Const. Baldeschweiler v. Ship, 21 Tex. Civ. App. 80, 50 S. W. 644. In Ford v. Fosgard, 25 S. W. 445, it was said:

"The property must partake of the character of homestead to entitle it to this distinction. It must belong to the homestead; it must be related to it by use in connection with its enjoyment to give it the privilege of homestead protection."

The only facts disclosed by this record in any wise tending to impress the homestead character upon the land are: (1) The intention of the Lasseters that it should be their homestead, and claim that it was. (2) The use of the grubs taken from the land at the time the clearing was done by some Mexicans employed for that purpose. (3) The appropriation of the rents to the support of the family.

[2] Intention alone is insufficient to so impress a tract of land detached from the premises upon which a rural home is situate. The intent of the parties is unimportant, unless accompanied by a use sufficient to impress the homestead character upon the property. Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832; O'Brien v. Woeltz, 94 Tex. 148, 58 S. W. 943, 59 S. W. 535, 86 Am. St. Rep. 829.

[3] The hauling of the grubs to the home on the 31 acres, and use there, was a mere incident to the clearing of the land. The land was grubbed for the purpose of preparing it for cultivation, and not to obtain the grubs for any use at the home. It is the principal use which must be looked to in determining whether or not the land is impressed with the homestead character. Blair v. Bank, 61 Tex. Civ. App. 441, 130 S. W. 718, and cases cited.

[4] There remains only to be considered the use of the rents for the support of the family. In Blum v. Rogers, 78 Tex. 530, 15 S. W. 115, an urban homestead case, Justice Gaines said:

"To protect lots in a town or city not actually occupied by the family residence or its appurtenances, they must be substantially used by the family for home purposes. When they are detached by inclosures from the homestead lot proper and are improved for the purpose of being leased to tenants and of thereby producing an income, it is evident they are no longer used as adjuncts of the family residence, and should be no longer exempt from forced sale. The mere fact that portions of the land may be occasionally used for a family purpose, such as to grow vegetables, to shelter live stock, or to furnish water, is not enough to shield it from sale under execution for the payment of the owner's debts. The principal use to which they are subjected must be looked to, and where, as evidently appears in this case, the main purpose to which the property is devoted is to bring in an income, and the family use is not only secondary and subordinate but of trivial importance, the property should be no longer deemed a part of the homestead. * * * We do not wish to be understood as holding that the mere renting of a part of the homestead will subject it to forced sale. But what we do hold is that when a town or city homestead is practically divided, and a part or parts are improved with buildings and other appurtenances which are neither necessary to nor intended for the convenience of the family, and they are evidently held for the purpose of being leased, an unimportant subsidiary use for household purposes will not protect the lots so improved from forced sale in a case like the present, where the lots not so appropriated possess every convenience of a comfortable home."

So far as concerns a use for home purposes, the rule announced in Blum v. Rogers has been held to be applicable to rural homesteads. Autry v. Reasor, 102 Tex. 123, 108 S. W. 1162, 113 S. W. 748, on rehearing; Roberts v. Cawthon, 26 Tex. Civ. App. 477, 63 S. W. 332; Haswell v. Forbes, 8 Tex. Civ. App. 82, 27 S. W. 566. The land in controversy being detached from the tract upon which the Lasseter home was located, it could not become a part of the homestead, or be impressed with the homestead character, by anything less "than would be necessary to designate the homestead originally. * * * When the lands are separated, there must be such use as will amount to a designation of homestead of the subsequently acquired parcel, as fully as the same would be required in the original designation of homestead." Brooks v. Chatham, 57 Tex. 31.

[5] The main purpose to which the 160-acre tract was devoted was to bring in an income, and the fact that this income is devoted to the support of the family, Lasseter's share of the grain and feed crops being used in kind, did not alone constitute a user of the land for the purpose of a home. Upon the original opinion in Autry v. Reasor, Judge Gaines said:

"We do not hold that, if the land had been rented and the proceeds sold and the money used for the support of the family, this would have been sufficient to exempt the property."

And in concurring in the result Judge Williams said:

"I am not prepared, however, to agree that the single circumstance of the use of the rents, even in kind, for the support of the family was sufficient to impress the rented land with the homestead character."

In this case, upon rehearing, it was said that there was no reason why the rule announced in Blum v. Rogers, that the building of a home within the town on a certain lot

and renting same, deprived it of its homestead character, should not apply to a rural homestead and expressly withdrew any expressions to the contrary in the original opinion.

Appellees rely upon the case of Baldeschweiler v. Ship, supra, decided by the Galveston Court of Civil Appeals. The facts in that case disclose that Ship bought the detached tract of land for the purpose of a home, because he could not get land enough adjoining his home place for his support. He was a farmer, but his physical condition was such that he was unable to actively engage in farming operations. The tract upon which Ship lived and the detached tract were farmed under the same kind of' arrangements, namely, the tenants paying a part of the products, some of which was used in kind by Ship, and the rest sold, and the proceeds used for the support of Ship and his family. The court upheld a finding that the detached tract was a part of the homestead. The ground of the decision was thus announced:

"The mere fact that means realized from the use of property separated from that upon which the residence is situated are used in supporting the family is not claimed, of itself, to work the exemption in all cases. But where all the land is employed by the head of the family, in the pursuit of his business appropriate to the country, such as farming, and used together for the same purpose of sustaining the family in the home, we can see no reason for saying that it is not all exempt; nor can we see that the character of the arrangement by which he utilizes it for such purposes, whether by his own labor, by that of hired hands, or of tenants, should be made decisive. By any or all of these methods of farming the land may be made the means of maintaining the home and supporting the family. To constitute a designation as part of the homestead of a tract separated from the place of residence 'there must be something more than mere intention; there must be some act done which will evince an intention to use it as a home, or * * * to use it in some way in connection with the home place, for the comfort, convenience, or support of the family. * * * Such designation must consist in the use of the detached parcel or parcels, in connection with the home place, or in such preparation to so use as will clearly evidence the intention to so use; but this must vary according to the character of the detached parcel of land, and the purpose for which it is adapted and for which it is intended.' Brooks v. Chatham, 57 Tex. 33, 34. The land here in question was actually used in the same way and for the same purposes as that upon which the party lived. All was done under a scheme devised, by which it might best be made available for the support of the family. This manner of use was adapted to his condition and that of the family, and was one to which the property was adapted. In our opinion it was such as to make that connection with the use of the home itself which the constitution and the decisions require. Pridgen v. Warn, 79 Tex. 588, 15 S. W. 559."

In the case at bar, Lasseter bought the 160 acres several years before he moved to Mitchell county, and it does not appear that he bought it for a homestead. It may be,

and is by us conceded, that this is not a material distinction, because he had the right to subsequently impress it with the homestead character. But the material distinction lies in the fact that it does not appear that the rental of the 160-acre tract by Lasseter was done under a scheme of farming devised for the purpose of making the land available for the support of himself and family. Lasseter, upon coming to Mitchell county, became interested in a mercantile business, and became and for some time continued more or less actively engaged in that. The use which he made of the 160-acre tract was incidental, and it was not principally used for the purpose of a home. Lasseter's use of the 160-acre tract was the ordinary case of a man owning a tract of land which he rented, using the proceeds for the support of himself and family. He made exactly the same use of the 320-acre tract which he also owned.

In this connection it is pertinent to note that Judge Williams, who wrote the opinion in the Baldeschweiler Case, was a member of the Supreme Court when the opinion in Autry v. Reasor was delivered, and in this case, in concurring in the original affirmance of the latter case, he expressly stated that he was not prepared to agree that the single circumstance of the use of the rents, even in kind, for the support of the family, was sufficient to impress the rented land with the homestead character. In the case at bar, it seems to us that the only circumstance tending to impress the homestead character upon the 160-acre tract is the fact that its rental proceeds, a portion thereof being used in kind, were employed for the family support. In cases of this nature, it is impossible to announce any general rule which can be unerringly applied to different facts. Each case, in large measure, must be determined upon its own facts. We have had great difficulty in reaching a conclusion in this case, but believe it ruled by Autry v. Reasor. See, also, Allen v. Whitaker, 18 S. W. 160.

[6, 7] The constitutional proviso as to temporary renting is not presented by this case. The homestead character must have been first impressed upon property before this proviso can ever become pertinent. Under our view, the 160-acre tract was never impressed with that character. The case seems to have been fully developed, and upon the facts presented we are of the opinion that judgment should have been rendered for appellants.

The case will therefore be reversed, and rendered in their favor. It is so ordered.

WALTHALL, J., did not sit, being absent on committee of judges assisting the Supreme Court.