In re Larry Clifton **BROOKS,** Debtor.

Bankruptcy No. 98–10595–13.

United States Bankruptcy Court, N.D. Texas, Abilene Division.

May 17, 1999.

---

42. 43 B.R. 644 (Bankr.S.D.Fla.1984).

697

John Mitchell Nevins, Dallas, TX, for Moseley & Standerfer.

Dick Harris, Abilene, TX, for Debtor.

Walter O'Cheskey, Lubbock, TX, Chapter 13 Trustee.

### MEMORANDUM OF OPINION ON RURAL HOMESTEAD EXEMPTION

JOHN C. AKARD, Bankruptcy Judge.

Larry Clifton Brooks, the Debtor in this Chapter 13 proceeding, filed an amended claim of exemptions including a rural family homestead in response to objections filed by Moseley and Standerfer, P.C. Having considered the pleadings, the parties' briefs, and the argument presented by counsel, the court finds that Mr. Brooks is

not entitled to claim a rural family homestead.[1]

## FACTS

On December 19, 1997, Moseley & Standerfer, P.C., (M & S) received a summary judgment in its favor in the 134th District Court of Dallas County, Texas for unpaid attorney's fees and interest owed by Mr. Brooks.[2] Mr. Brooks filed for relief under Chapter 13 of the Bankruptcy Code on July 14, 1998. In his petition, Mr. Brooks claimed as his homestead three tracts of land in Irion County, Texas. He also claimed as exempt 100 Spanish goats. M & S objected to both claims. The parties entered into an agreed order allowing Mr. Brooks to amend his exemptions. Accordingly, Mr. Brooks filed an amended claim reducing the number of livestock contained in the exemption to 60 goats.[3] Subsequently, M & S renewed its objection to the rural family homestead claim.

Mr. Brooks is 62 years of age and lives on what remains of the Brooks Ranch. The ranch encompassed approximately 10,000 acres until it was divided among the Brooks family in 1985. After partition, the death of Mr. Brooks' father and subsequent sales of property continued to change the character of the ranch.[4] Mr. Brooks currently owns:

a. an undivided one-half interest in 199.84 acres for which he asserts a net homestead claim of 99.92 acres. The parties referred to this as Tract 1;

b. a 34 acre parcel, referred to as Tract 2; and

c. a 3 acre parcel, referred to as Tract 3.

His mother owns the other one-half interest in Tract 1. She also owns the land between Tracts 1 and 2 upon which is located the house in which Mr. Brooks and his mother reside.[5]

Mr. Brooks included his interest in Tract 1 as well as Tracts 2 and 3 in his rural family homestead exemption as they represent the only real property he owned when he filed his petition. His claimed exemption totals 136.92 acres. Less than one mile separates the residence from the three tracts. Tracts 1 and 2 are contiguous and are not completely fenced. For many years, Mr. Brooks performed ranching operations on those two tracts.[6] Tract 3 is located apart from Tracts 1 and 2 and is completely fenced. Since 1991, Tract 3 has been leased to Conoco Inc. for a compressor site.

Pursuant to a 1995 divorce decree, Mr. Brooks is Joint Managing Conservator with his ex-wife of two minor children. Most of the year the children live with their mother in San Angelo, Texas. They live with Mr. Brooks on the ranch on odd weekends, holidays, and during the sum-

1. This court has jurisdiction of this matter under 28 U.S.C. §§ 1334(a), 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in order of Reference of Bankruptcy Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(B).

2. See Proof of Claim 6 which states that the amount now due is $192,902.24.

3. M & S Ex. 2.

4. Neither the details of the partition nor the changes in ownership as a result of the death of Mr. Brooks' father were disclosed in the evidence presented at hearing.

5. Testimony by Mr. Brooks established that the house contains three bedrooms and two bathrooms, that the house is in good condition and that no formal arrangement exists between Mr. Brooks and his mother as to his living in the house.

6. Mr. Brooks testified that he grazed cattle and Spanish goats on Tracts 1 and 2 for many years. However, drought and related financial difficulty forced him to sell his cattle in April 1998. Currently, Mr. Brooks grazes Spanish goats on his and his mother's property. He generates approximately $200 a month in income from the sale of goats. Mr. Brooks has no formal arrangement with his mother about using her property for his ranching activity.

mer. Mr. Brooks, as Joint Managing Conservator, is partially responsible for the financial support of his two children. In addition to his ranching activities, Mr. Brooks receives Social Security payments which are his only other source of income.

### ISSUE

This unique set of facts presents the question whether Mr. Brooks must reside on the land to impress it with homestead characteristics.

### POSITIONS OF THE PARTIES

M & S contends that Mr. Brooks is not entitled to a homestead interest in Tracts 1, 2, and 3 because he neither lived on any part of the three tracts nor did he manifest an intent, coupled with overt acts of preparation, to reside on the property in the future. M & S agrees that the acreage claimed by Mr. Brooks is rural in character and that Mr. Brooks would be entitled to a family homestead if he were to establish all other requisites of a homestead under Texas law.[7]

Mr. Brooks contends that because of the unique facts of his case, he is entitled to full homestead protection for all of the land in which he claims an ownership interest. He asserts that neither the Texas Constitution nor the Texas Property Code absolutely require a debtor to reside on rural property to give it homestead characteristics. Mr. Brooks believes he is entitled to homestead protection because for many years he conducted activities on these tracts which contributed to the support of his family. He continues to perform ranching activities on these tracts. Additionally, the tracts are located within one mile of each other, and Mr. Brooks lives with his mother on part of the ranch.

---

**7.** *Stipulations of Parties,* at 2. Under Texas law, a divorced debtor with child support obligations constitutes a "family" for purposes of a rural homestead and is entitled to the full 200 acre exemption. *In re Barnett,* 33

### APPLICABLE STATUTES

TEX. CONST. art. XVI, § 51.

The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon.... provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the homestead claimant, whether a single adult person, or the head of a family....

TEX.PROP.CODE ANN. § 41.002(b)(1) (Vernon Supp.1999). Definition of Homestead

....

(b) If used for the purposes of a rural home, the homestead shall consist of:

(1) for a family, not more than 200 acres, which may be in one or more parcels, with the improvements thereon....

### DISCUSSION

#### Homesteads are to be Construed Liberally

■ Traditionally, Texas courts provided broad protection to homestead claims by liberally construing the Texas Constitution and the Texas Property Code. "The rule that homestead laws are to be liberally construed to effectuate their beneficent purpose is one of general acceptation." *Woods v. Alvarado State Bank,* 118 Tex. 586, 19 S.W.2d 35 (Tex.1929). In fact, because homesteads are such favorites of the law, the constitutional and statutory provisions pertaining to homesteads should be upheld and enforced even though a court might unwittingly assist a dishonest debtor in wrongfully defeating his creditor. *Cocke v. Conquest,* 120 Tex. 43, 35 S.W.2d 673, 678 (Tex.1931); *Bradley v. Pacific*

---

B.R. 70 (Bankr.N.D.Tex.1983). Mr. Brooks is Joint Managing Conservator of two minor children to whom he provides financial and paternal support.

*Southwest Bank (In re Bradley),* 960 F.2d 502, 507 (5th Cir.1992), *cert. denied, Commonwealth Land Title Ins. Co. v. Bradley,* 507 U.S. 971, 113 S.Ct. 1412, 122 L.Ed.2d 783 (1993).

### Must Mr. Brooks live on the land to claim it as homestead?

In this case Mr. Brooks lives on adjacent land with his mother. He uses the claimed land to raise Spanish goats which produces income for him and presumably assists with his family support obligations. Is this "near by" residency sufficient to allow him to impress a homestead character on the claimed land? The court has been unable to find any cases which directly address this issue. The possibility was mentioned by the United States Court of Appeals for the Fifth Circuit in *Woodward v. Sanger Bros.,* 246 F. 777 (5th Cir.1917), *cert. denied, Sanger v. Woodward,* 246 U.S. 674, 38 S.Ct. 425, 62 L.Ed. 932 (1918) when it stated:

> This provision of the Constitution leaves very little basis for distinction between the homestead consisting of one tract of not more than 200 acres, and one made up of several parcels, aggregating not more than 200 acres. It is, however, a homestead which the Constitution exempts, and not 200 acres of land in the country. A fundamental idea involved is a place of residence. While circumstances might exist which would fix or maintain the homestead character of the land without actual residence, yet residence is normally an element.

*Id.* at 780. This language was quoted with approval by the court in *Cocke, supra* at 677. However, later in the opinion the *Cocke* court said:

> The framers of our organic law had no thought of exempting 200 acres of land in the country as a home for each family, upon which its members might reside, when they thought proper, but this exemption is only in the event such lands are used for the purpose of a home. The exemption is not of any definite

number of acres, but of a home, and the number of acres is a limitation placed upon that home. As said by the author of Speer's Law of Marital Rights in Texas, par. 463: "Expressions may be found in some of the decisions which seem to indicate that the proviso, with reference to the use of property for home purposes do no not apply to the rural homestead. But the better authorities as well as a proper construction of their language of the section show unmistakably that it does."

*Cocke, supra* at 678.

■ The requirement that the property be used as a home is carefully set forth in Tex.Prop.Code § 41.002(b) which states: "If used for the purposes of a **rural home**, the homestead shall consist of . . ." (emphasis added). Certainly the home need not occupy the entire 200 acres, but the home must be an integral part of the property claimed. "To establish a homestead claim in rural property, the claimant must reside on part of the property and use the property for purposes of a home, although the claimant need not reside on all the parcels so long as the other tracts are used for the support of the family." *Riley v. Riley,* 972 S.W.2d 149, 154 (Tex.App.—Texarkana 1998, no writ).

### Preparation for Use as a Home

■ The one exception to actual occupancy of the property for homestead purposes recognized by the Texas courts is where the claimant intends to occupy the property and has made preparations toward occupancy.

> [A] homestead exemption may be established upon unoccupied land if the owner presently intends to occupy and use the premises in a reasonable and definite time in the future, and has made such preparations toward actual occupancy and use that "are of such character and have proceeded to such an extent as to manifest beyond doubt the

intention to complete the improvements and reside on the place as a home."

*Farrington v. First Nat'l Bank,* 753 S.W.2d 248, 250 (Tex.App.—Houston [1st Dist.] 1988, writ denied) (citations omitted).

Mr. Brooks stated that he had always planned to build a house on a particular portion of the property in question. However, he made no "preparations toward actual occupancy and use" to bring his intentions within the exception described above.

### Conclusion

Where the debtor claims the Texas exemptions, as Mr. Brooks did in this case, this court is bound to follow the Texas courts' interpretations of state law. Texas courts have consistently stated that occupancy of a portion of the rural land as a home is necessary to claim the land as an exempt homestead. Since Mr. Brooks does not occupy any of the land he seeks to exempt as a home and since his activities are insufficient to demonstrate a present intention to construct improvements on the property and to reside on the property, his claim of exemption must be denied.

ORDER ACCORDINGLY.[8]

8. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to FED.R.BANKR.P. 7052 which is made applicable to Contested Matters by FED. R.BANKR.P. 9014. This Memorandum will be published.