In re William C. WEBB and Elma Mae Webb, Debtors.

No. 00–62457–LEK.

United States Bankruptcy Court, W.D. Texas, Waco Division.

June 19, 2001.

James C. Herring, Waco, TX, for debtors.

Ray Hendren, Austin, TX, Chapter 13 Trustee, pro se.

***FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER SUSTAINING TRUSTEE'S OBJECTION TO SCHEDULE C (DEBTORS' EXEMPTION)***

LARRY E. KELLY, Bankruptcy Judge.

On June 12, 2001, came on to be heard the Objection to Schedule C filed by the

Chapter 13 trustee in the above-referenced case (the "Objection"). Having reviewed the Objection and considered the evidence and arguments of counsel, the court took the matter under advisement at the conclusion of the hearing. The following are the court's findings of fact and conclusions of law, in support of its order sustaining the Trustee's Objection. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## BACKGROUND

The Debtors have claimed as their exempt homestead under Texas law a residence located at 1562 Roadrunner in Reisel, Texas, and three rent houses located on three separate parcels of land, being 1560 Roadrunner in Reisel; 140 Kochne Rd. in Mart, Texas; and 1936 Four Mile Road, also in Mart. The total acreage of the four parcels is 12.86 acres. The Trustee objected on the grounds that the Debtors may claim no more than a total of ten acres as an urban homestead under Texas law, and may not claim any of the rent houses as they are not used for the purpose of a home.

At the hearing, the Debtors clarified that their claim was one for a rural, and not an urban, homestead and, thus, instead of ten acres they are entitled to exempt up to 200. The Trustee did not contest the rural characterization of the homestead, but continued to urge his objection to the exemption of the property on which the rent houses are located.

## DISCUSSION AND ANALYSIS

Article XVI, § 51 of the Texas Constitution provides:

§ 51. Amount of homestead; uses

Sec. 51. The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village, shall consist of lot or contiguous lots amounting to not more than 10 acres of land, together with any improvements on the land; provided, that the homestead in a city, town or village shall be used for the purposes of a home, or as both an urban home and a place to exercise a calling or business, of the homestead claimant, whether a single adult person, or the head of a family; provided also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired; provided further that a release or refinance of an existing lien against a homestead as to a part of the homestead does not create an additional burden on the part of the homestead property that is unreleased or subject to the refinance, and a new lien is not invalid only for that reason.

Sections 41.002(b) and (c) of the Texas Property Code provides, as the "Definition of Homestead" for rural property:

\* \* \* \* \* \*

(b) IF USED FOR THE PURPOSES OF A RURAL HOME, the homestead shall consist of:

(1) for a family, not more than 200 acres, which may be in one or more parcels, with the improvements thereon; or

(2) for a single, adult person, not otherwise entitled to a homestead, not more than 100 acres, which may be in one or more parcels, with the improvements thereon.

(c) A homestead is considered to be urban if, at the time the designation is made, the property is:

(1) located within the limits of a municipality or its extraterritorial jurisdiction or a platted subdivision; and

(2) served by police protection, paid or volunteer fire protection, and at least three of the following services provided by a municipality or under contract to a municipality:

 (A) electric;

 (B) natural gas;

 (C) sewer;

 (D) storm sewer; and

 (E) water. (emphasis added)

The Trustee in this case argues that the parcels with the rent houses are not "used for the purposes of a rural home" within the meaning of Tex. Prop.Code § 41.002(b). The Debtors essentially argue that there is no such limitation on non-contiguous parcels that do not contain the residence, and that the parcels on which the rent houses are located, together with the parcel on which the family residence is located, are properly exemptible as "not more than 200 acres, which may be in one or more parcels, with the improvements thereon."

There are few areas of Texas law on which there are more reported decisions than Texas homestead law. The area is further complicated by the age of many of those cases and the different historical and social contexts in which they were decided, in addition to the different statutory language that applied as a result of the amendments to Texas homestead laws through the years. This court has previously engaged in a lengthy survey and analysis of Texas law to determine what are permissible uses of a rural property as a homestead. *See In re Mitchell,* 132 B.R. 553 (Bankr.W.D.Tex.1991). That inquiry, and other decisions of the courts on the issue, persuade this court that the use of the parcels in question, solely as residences permanently rented to unrelated persons and without any other use by the Debtors' family, is insufficient to impress a homestead character on the parcels under Texas law.

■■■ The starting point in determining homestead issues is, of course, that "[b]ecause homesteads are favorites of the law, we must give a liberal construction to the constitutional and statutory provisions that protect homestead exemptions." *Bradley v. Pacific Southwest Bank (In re Bradley),* 960 F.2d 502, 507 (5th Cir.1992), *cert. denied, Commonwealth Land Title Insurance Co. v. Bradley,* 507 U.S. 971, 113 S.Ct. 1412, 122 L.Ed.2d 783 (1993). In addition, "[i]t is well settled in Texas that an individual who seeks homestead protection has the initial burden to establish the homestead character of her property." *Id.,* citing *Lifemark Corp. v. Merritt,* 655 S.W.2d 310, 314 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.).

There are numerous decisions holding that the permanent renting of property deprives it of its homestead character. *See e.g., Blum v. Rogers,* 78 Tex. 530, 535, 15 S.W. 115, 117 (1890) (with respect to rental houses on lots contiguous to the claimant's residence, "[t]he principal use to which they are subjected must be looked to; and where, as evidently appears in this case, the main purpose to which the property is to be devoted is to bring in an income, and the family use is not only secondary and subordinate, but of trivial importance, the property should be no longer deemed a part of the homestead."); *Mays v. Mays,* 43 S.W.2d 148, 152 (Tex. Civ.App.—Beaumont 1931, writ refused n.r.e.) (where "a building [is] erected for the purpose of leasing to tenants, such use is inconsistent with its exemption as the place of business, and will form no part of the business home.").

■■■ However, most of these cases interpret what may be claimed as exempt as an *urban business* homestead. Under the express language of Tex. Prop.Code

§ 41.002(a), an urban homestead may be a residential or a business homestead. In contrast, "the rural homestead exemption does not include a business homestead component. Instead, § 41.002(b) allows a family or single adult to claim up to 200 or 100 acres of property, respectively, for the purposes of a rural home." *PaineWebber, Inc. v. Murray*, 260 B.R. 815, 822 (E.D.Tex.2001) (footnotes omitted).

▮ Although the business/residence distinction does not apply in this case of a rural homestead as claimed in this case, contrary to the Debtors' position the homestead exemption is not without limitation. Both the express language of § 41.002(b) and the case law make it clear that property separated from the tract where the residence is located, to be included in a rural homestead, must be "used for home purposes." *Cocke v. Conquest*, 120 Tex. 43, 52, 35 S.W.2d 673, 678 (1931) ("Expressions may be found in some of the decisions which seem to indicate that the proviso, with reference to the use of property for home purposes do not apply to the rural homestead. But the better authorities as well as a proper construction of their language of the section show unmistakably that it does."). Thus, the sole question in this case is whether the Debtors' use of the three tracts as rental properties qualifies as a "use for the purposes of a home."

▮ What qualifies as a "use for the purposes of a home"? "There must be some act done which will evince an intention to use it as a home or, if separated from the tract upon which the home of the family stands, to use it in some way, in connection with the home place, for the comfort, convenience, or support of the family, or as a place of business for the head of the family." *Brooks v. Chatham*, 57 Tex. 31, 1882 WL 9451, *2 (Tex.1882). In this case, one of the Debtors testified

that they made no use of the rented parcels other than as rental property. Therefore, the evidence supports only one possible use of the property that would qualify it as homestead: as "support" of the Debtors' family. *See Mays v. Mays*, 43 S.W.2d 148, 151 (Tex.Civ.App.—Beaumont 1931, writ refused n.r.e.) ("One of the purposes of a rural homestead is to support the family therefrom."); *accord, Riley v. Riley*, 972 S.W.2d 149, 154 (Tex.App.—Texarkana 1998, no writ) ("To establish a homestead claim in rural property, the claimant must reside on part of the property and use the property for purposes of a home, although the claimant need not reside on all the parcels so long as the other tracts are used for the support of the family."); *In re Brooks*, 233 B.R. 696, 700 (Bankr.N.D.Tex.1999) (same, quoting *Riley*).

▮ In this case, the rental income that the Debtors derive from the property clearly adds to their support. The difficulty is that "[m]ost cases refer to the need to show that the separate tracts support the family without adequately addressing the kind of evidence that indicates support. . . . [M]any of them presume that activities like cultivating crops, pasturing cows, or chopping wood constitute evidence of support. . . ." *PaineWebber v. Murray*, 260 B.R. 815, 830 (E.D.Tex.2001). The historical context of these older cases must be considered, however; they involve a time and a place where "support" of the rural lifestyle necessarily meant that you provided many of your own essentials such as vegetables, meat, fuel, etc. *See In re Mitchell*, 132 B.R. 553, 559 (Bankr.W.D.Tex.1991) (noting the different factual context of early homestead opinions). Care must be taken to determine the applicability of these early decisions to modern day country lifestyles and today's claim of a rural homestead.

■ That said, there are several older cases that address the rental of part of a claimed rural homestead. Virtually all of these decisions involve homestead claimants who were farmers and tenants who leased the detached tract in question and who paid the rent, at least in part, as a share of the crops produced. Even in cases with such distinguishable facts, however, a clear bottom-line rule emerges regarding the effect that renting property has on its eligibility for exemption as a rural homestead. That rule is that something more is required for exemption than the use of the rental proceeds for the support of the claimant.

In *Haswell v. Forbes,* 8 Tex.Civ.App. 82, 27 S.W. 566 (Tex.Civ.App. 1894, no writ), the court cautioned that the mere use of rental proceeds for the support of the family was not enough to permit the exemption of detached parcels as part of a rural homestead:

> Under the charge of the court, a piece of land separate from the home tract, it matters not how used,—whether in common with the home or not,—if it produced revenue, and the revenue contributed to the use of the family's support, ... would constitute a homestead, and be exempt from mortgage and forced sale. We think this definition too broad. . . .

The court held that, properly stated, the law was that "[w]hen a lot or tract of land is separate from the lot or tract on which the residence of the family is situated, to invest it with the homestead character, it is not enough that it be used as 'a means of support and maintenance for the family,' but it must be used in connection with the residence, and appurtenant thereto" and that "the [trial] court should ... have submitted to the jury, for their determination, whether or not the land in controversy was used in connection with the home, for the

comfort and convenience of the family." *Id.* at 86, 27 S.W. at 567.

In *Baldeschweiler v. Ship,* 21 Tex.Civ. App. 80, 50 S.W. 644 (Tex.Civ.App. 1899, no writ), the court reiterated that "[t]he mere fact that means realized from the use of the property, separated from that upon which residence is situated, are used in supporting the family, is not claimed, of itself, to work the exemption in all cases." It elaborated:

> ... where all the land is employed by the head of the family in the pursuit of his business appropriate to the country, such as farming, and used together for the same purpose of sustaining the family in the home, we can see no reason for saying that it is not all exempt. Nor can we see that the character of the arrangement by which he utilizes it for such purposes, whether by his own labor, by that of hired hands, or of tenants, should be made decisive. By any or all of these methods of farming the land may be made the means of maintaining the home and supporting the family.

*Id.* at 82, 50 S.W. 644. The court then allowed the exemption, as part of a rural homestead, a detached 92.35–acre tract that was rented for a share of the crops, some of which the claimant used in kind, some of which were sold for him, and some of which he bartered with. The court emphasized that the claimant was disabled and unable to work the land himself, that he supplied many of the tools used, and that the tract upon which he lived was used in the same manner.

In *Roberts v. Cawthon,* 26 Tex.Civ.App. 477, 63 S.W. 332 (Tex.Civ.App.1901, no writ), the court remanded for a determination by the jury on the issue of whether one 2–acre parcel was urban or rural, and on the issue of whether another 50–acre parcel was used for the purposes of a

home where it had been leased for 18 years, sometimes for a share of the crops and sometimes for money. The court held that the jury's charge on the latter issue should include "an explanation of the purport and meaning" of the phrase "used for the purposes of a home" and noted that "[i]t is true that disconnected tracts of land may constitute parts of the homestead when they are used for the purposes of a home; but it is not true in all cases that the mere use of the rents derived from a particular tract of land for the purpose of maintaining and supporting the family will constitute a use of such land for the purposes of a home." *Id.* at 483, 63 S.W. at 335–36.

In *Autry v. Reasor,* 102 Tex. 123, 128, 113 S.W. 748 (1908), the Texas Supreme Court applied the rule established in *Blum v. Rogers,* discussed above, to rural homesteads. The court held that the general rule that "the building of a house ... and renting it deprives it of its homestead character" applies to a rural homestead as well as an urban one. Specifically, the court held that where there was no evidence that a separate 39–acre tract "was used for the purpose of a home, other than that the proceeds [of the rental of the property] were probably used in support of the family", the separate tract could not be included in the exempt rural homestead. *Autry,* 102 Tex. at 128, 113 S.W. at 748.

In *Woodward v. Sanger Brothers,* 246 F. 777 (5th Cir.1917), *cert. denied,* 246 U.S. 674, 38 S.Ct. 425, 62 L.Ed. 932 (1918), the court found that a 59–acre detached tract that was partially leased and partially farmed by the claimant "through her children," could be exempted as part of her rural homestead. The tenants paid the rent in crops that were used in kind by the claimant. The court expressly disagreed with *Autry* in dicta, but also distinguished it from its holding by noting that in *Wood-*

*ward,* the claimant's husband had briefly farmed the tract and had used a contiguous parcel for wood, and after his death her children had farmed part of the tract for her. The result in *Woodward* is reconciled with *Autry* on this basis in *Vaughn v. Vaughn,* 279 S.W.2d 427 (Tex.Civ.App.— Texarkana 1955, writ refused n.r.e.), discussed below.

In *Blackwell v. Lasseter,* 203 S.W. 619 (Tex.Civ.App.—El Paso 1918), *affirmed sub nom. Lasseter v. Blackwell,* 227 S.W. 944 (Tex.Comm'n App.1921, opinion adopted), the Court of Appeals held that a detached rural 160–acre tract that was leased to tenants who paid rent in the form of a share of their crops, could not be claimed as part of the claimants' exempt rural homestead. Again, the court noted that the claimants' use in kind of some of their share of the crops from the property was not, alone, a sufficient use of the land for the purpose of a home.

In *Youngblood v. Youngblood,* 124 Tex. 184, 76 S.W.2d 759 (Tex.Comm'n App.1934, opinion adopted), the court allowed the exemption of a 99–acre tract that was leased first to the claimants' son-in-law and then to their son, both of whom paid rent in crops, some of which were sold for the claimants' credit and some of which were used by the claimants in kind. The court distinguished *Autry* by pointing out that the two tracts in *Youngblood* were contiguous but for an unfenced public road that ran between them, and the 99–acre tract was leased to the claimants' children so that they could care for their aging parents, the claimants, which they actually did.

Finally, in *Vaughn v. Vaughn,* 279 S.W.2d 427 (Tex.Civ.App.—Texarkana 1955, writ refused n.r.e.), the court held that a 48–acre tract, approximately three miles from two contiguous 36–acre and 40–acre tracts on which the claimant's resi-

dence was located, could not be claimed as exempt as part of her rural homestead. The 48–acre tract had been rented out for decades for a share of the crops grown by the tenant, and the court found there was no evidence that the claimant made any use of it "other than that the 48–acre tract was rented ... and that they used the income and rents to live off." *Id.* at 433.

## CONCLUSION

 Uses of a rural homestead are clearly no longer limited to farming and ranching. *In re Mitchell,* 132 B.R. 553, 561 (Bankr.W.D.Tex.1991) ("one can work in the city (i.e. not be engaged in farming or ranching) and still be entitled to a rural homestead. The land directly used by this man for the 'comfort and convenience' of his family was all that the Texas Supreme Court looked to in determining that it was a part of his rural homestead."). Even in today's rural environment, however, the limitless rule proposed by the Debtors in this case—that the detached tract need only fit within the acreage limit and is not subject to any use restriction—raises the same concerns that the court in *Roberts v. Cawthon,* 26 Tex.Civ.App. 477, 63 S.W. 332 (Tex.Civ.App.1901, no writ), expressed:

> To declare as matter of law that each tract of land occupied by the family or used for its support and maintenance, when all together do not exceed 200 acres, is part of the homestead, regardless of its remoteness from the family residence and the length of time that it has been rented out and not occupied or used by the family, is stating the law too broadly in favor of the homestead exemption. *Houston and Great Northern Railroad Co. v. Winter,* 44 Tex. 597. It is true that disconnected tracts of land may constitute parts of the homestead when they are used for the purposes of a home; but it is not true in all cases that the mere use of the rents derived from a particular tract of land for the purpose of maintaining and supporting the family will constitute a use of such land for the purposes of a home. *Haswell v. Forbes,* supra. For, if such was the case, a family might reside for 30 years in a rented house outside of a city, town, or village in one county, and hold as a homestead a 200–acre farm 500 miles away, and in another county, by appropriating the rents derived therefrom to the support of the family; because, if the mere use of the rents of the farm for the support of the family will constitute it homestead, then it is immaterial whether the family own the property upon which they reside, and whether the farm be connected with, or hundreds of miles from, the residence.

*Id.* at 483, 63 S.W. at 335–36.

 In this case, nothing supports the Debtors' exemption claim of the rental properties other than that the income they produce is used for the support of the Debtors' family. The cases illustrate that, even during those times when renting agriculture land for a share of the crops might not preclude its exemption, it has always been the rule that the mere use of the rental proceeds as income, or "support," without any other use of the property "for the purposes of a home," is insufficient to qualify it as a rural homestead. To follow the Debtors' logic would be to state a rule wherein a debtor could acquire dozens of rent houses, scattered throughout the state, and so long as each was situated on a rural tract and the aggregate acreage fit within the amounts allowed by law, each "rent house" could be claimed as the debtor's "homestead". Homestead is, this court thinks, a different proposition. As stated in the case law, the land must be used for some "purpose" of a home. Rent houses are not within that intendment.

Accordingly, the court finds that the Debtors' claim of exemption should be denied, and the Trustee's Objection to Schedule C should be sustained. An order consistent with these findings and conclusions will be entered.